UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RANDALL WEIS,
  *Plaintiff*,

v.

NED LAMONT *et al.*,
  *Defendants*.

No. 3:20-cv-1753 (JAM)

**ORDER DISMISSING COMPLAINT PURSUANT TO 28 U.S.C. § 1915A**

  Plaintiff Randall Weis is a prisoner in the custody of the Connecticut Department of Correction ("DOC"). He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983. Weis alleges that defendants violated his Eighth Amendment rights by delaying his medical treatment. After an initial review, I conclude that his claims should be dismissed without prejudice as set forth in the ruling below.

### BACKGROUND

  Weis names ten defendants: Connecticut Governor Ned Lamont; former DOC Commissioner Rollin Cook; the current DOC Commissioner (Angel Quiros); Colleen Gallagher; HSA Rich Furey; RN Michelle Cyr; Dr. Johnny Wright; APRN Juanita Scott; Warden Nick Rodriguez; and Warden Jesus Guadarrama. Doc. #1 at 9-10 (¶ 3). Each defendant is sued in their official capacity. *Ibid.* The events underlying this action occurred while Weis was housed at Osborn Correctional Institution. *Id.* at 9 (¶ 3).

  The following facts are alleged in the complaint and are accepted as true for purposes of initial review only. On August 9, 2019, Weis submitted a sick call request complaining of ear pain and pain when swallowing. *Id.* at 10 (¶ 1). Weis was not seen that day and experienced

increased pain. *Ibid.* On August 13, 2019, Weis submitted a second request with the same complaint, but again was not seen. *Id.* at 10 (¶ 2).

On September 4, 2019, Weis submitted a third request and was seen the following day. *Id.* at 10 (¶ 3). Nurse S. Gunther gave Weis a strep test, which came back positive, and gave Weis amoxicillin. *Id.* at 10 (¶¶ 4-5).

Because the problem persisted and the pain in Weis's ears was getting worse, Weis submitted another request on September 14, 2019. *Id.* at 10 (¶ 6). Weis was seen on September 17 and again on September 19, 2019. *Id.* at 10 (¶ 7). When a second strep test came back negative, Weis was added to the list to see a doctor. *Id.* at 11 (¶ 8). Weis was told to drink warm water and not to use a loud voice, but was given nothing for his ears. *Id.* at 11 (¶ 9).

On September 25, 2019, Weis saw APRN Scott and explained his ear and throat issues to her. *Id.* at 11 (¶¶ 10-11). APRN Scott prescribed Nasacort and told Weis to gargle salt water. *Id.* at 11 (¶ 12).

Weis again submitted sick call requests on October 2 and October 24, 2019. *Id.* at 11 (¶ 13). Weis was told on both dates that he was placed on the list to see a doctor. *Id.* at 11 (¶ 14). Weis also signed up for prompt care and was seen on December 26, 2019 because of his continuing pain. *Id.* at 11 (¶ 15). Medical staff told Weis that they did not see his name on the doctor's list and added Weis to it. *Id.* at 11 (¶ 16).

Weis saw APRN Scott again on January 8, 2020. *Id.* at 11 (¶ 17). APRN Scott observed an infection in both of Weis's ears and gave Weis amoxicillin and ear drops. *Id.* at 11 (¶¶ 18-19). She also told Weis that she would consider him for an ENT referral after his treatment. *Id.* at 11 (¶ 20).

Weis's hearing and throat worsened, and his pain level rose rapidly from a 6 to a 10. *Id.* at 11 (¶ 21). Weis again signed up for prompt care and was seen by RN Zea. *Id.* at 11 (¶ 22). Weis told RN Zea about his "constant pain and loss of hearing," and RN Zea looked in Weis's ears. *Id.* at 11 (¶¶ 23-24). RN Zea told Weis she was going to email Dr. Wright and that Weis would see Dr. Wright the next day. *Id.* at 11 (¶¶ 24-25).

Weis saw Dr. Wright on January 24, 2020. *Id.* at (¶ 26). After listening to Weis's description of his symptoms, including his loss of hearing, Dr. Wright prescribed amoxicillin, flushed Weis's ears, and placed Weis on a list for an ENT visit. *Id.* at 11 (¶¶ 27-29). APRN Scott scheduled Weis to see the ENT within three weeks. *Id.* at 12 (¶ 30).

Weis's symptoms got worse, and he again signed up for prompt care, where he saw RN Huff on March 5, 2020. *Id.* at 12 (¶¶ 31-32). RN Huff told Weis she would email APRN Scott. *Id.* at 12 (¶ 32). But by March 20, 2020, Weis still had not seen the ENT. *Id.* at 12 (¶ 33). Weis's hearing "started to diminish greatly," and it became "harder and harder" for Weis to speak. *Id.* at 12 (¶ 34). Due to his ongoing pain, Weis signed up for prompt care again and was told he had to wait for the ENT. *Id.* at 12 (¶¶ 35-36). Weis asserts that "[b]ecause it took 5 months for what should have taken 3 weeks, [Weis] could no longer hear out of [his] left ear at all and could barely speak." *Id.* at 12 (¶ 37).

On June 12, 2020, Weis went to his first ENT visit. *Id.* at 12 (¶ 38). The doctor removed a "huge amount of blockage" in Weis's left ear and looked down Weis's nose and throat. *Id.* at 12 (¶¶ 39-40). Weis's hearing "was better but, still very much changed." *Id.* at 12 (¶ 41). The doctor diagnosed Weis with "Hyperadnoid rentinopathy and a vocal fold granuloma." *Id.* at 12 (¶ 42). He ordered Weis to see a vocal specialist and to get a hearing test and CT scan. *Id.* at 12 (¶

3

43).

On July 8, 2020, Weis saw Dr. Wang and Dr. Lafrenieve, who saw Weis's vocal fold and recommended surgery on his vocal cords. *Id.* at 12 (¶¶ 44-45). On July 29, 2020, Weis was sent to the University of Connecticut for an audiogram, the results of which showed that Weis had diminished hearing in his left ear. *Id.* at 12 (¶¶ 46-47). Weis was approved for a hearing aid by Erin Perez, who gave Weis the audiogram. *Id.* at 12 (¶ 48).

Weis states that his hearing has "diminished to the point that people must now speak to [Weis] loudly for [him] to hear," and his voice is hoarse and painful "no matter how hard [he] tr[ies]." *Id.* at 12 (¶¶ 49-50). Weis asserts that these conditions are "all due to delays in treatment by Medical Professionals" and that these delays are "due to a dysfunctional medical system at each level." *Id.* at 12 (¶¶ 51-52).

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

The Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*,

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

Weis's complaint is centered on three Eighth Amendment deliberate indifference claims premised on his delay in receiving treatment: (1) that defendants Governor Lamont, former DOC Commissioner Cook, current DOC Commissioner Quiros, Warden Rodriguez, and Warden Guadarrama failed to provide an adequate medical care system; (2) that defendants Gallagher, HSA Furey, RN Cyr, and Dr. Wright failed to supervise their staff; and (3) that defendant APRN Scott failed to realize that Weis's medical needs were outside her expertise. Doc. #1 at 13 (¶ 6). Weis requests declaratory and injunctive relief as well as compensatory and punitive damages. *Id.* at 13-14 (¶ 7).

The Eighth Amendment to the U.S. Constitution protects against the infliction of cruel and unusual punishment. *See* U.S. Const. amend. VIII. "An Eighth Amendment claim arising out of inadequate medical care requires a demonstration of 'deliberate indifference to [a prisoner's] serious medical needs.'" *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prevail on such a claim, a plaintiff must prove that "(1) objectively, the alleged deprivation of medical care was 'sufficiently serious,' and (2) subjectively, that the defendants acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'" *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006)).

To be "sufficiently serious," the deprivation of medical care must be "a condition of

urgency, one that may produce death, degeneration, or extreme pain." *Hill*, 657 F.3d at 122. This inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 280. Factors to consider include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

Weis alleges that delays in treatment for his ongoing throat and ear pain resulted in his hearing loss and the hoarseness and pain he experiences in speaking. Doc. #1 at 12 (¶¶ 49-51). Because Weis asserts that he experienced ongoing pain as a result of his condition and because his hearing loss and difficulty in speaking significantly affect his daily activities, I will assume for the purposes of this initial review that Weis has a serious medical need sufficient to satisfy the objective prong.

As for the subjective prong, in the Second Circuit, "[a]llegations of delayed medical care may support a finding of deliberate indifference to a serious medical need, and allegations that delayed treatment resulted in serious harm may bear on the reasonableness of an inference of a defendant's knowledge of the risks to which he or she subjected the plaintiff." *Dotson v. Fischer*, 613 F. App'x 35, 39 (2d Cir. 2015) (internal citations omitted). Under this prong, the "charged officials must be subjectively reckless in their denial of medical care," that is, they must "act or fail to act while *actually aware* of a substantial risk that serious inmate harm will result." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Salahuddin*, 467 F.3d at 280) (emphasis in original). They "need only be aware of the risk of

6

harm, not intend harm." *Ibid.*

But "[m]edical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness—'an act or a failure to act by [a] prison doctor that evinces a conscious disregard of a substantial risk of serious harm.'" *Hill*, 657 F.3d at 123 (quoting *Chance*, 143 F.3d at 703). Indeed, the level of recklessness required to meet the subjective prong is more than mere negligence. *See Salahuddin*, 467 F.3d at 280.

Because the subjective element of Weis's Eighth Amendment claims differ with respect to each claim, I will address them each in turn.

### *APRN Scott*

Weis asserts that he saw APRN Scott twice, once on September 25, 2019 and again on January 8, 2020. Doc. #1 at 11 (¶¶ 10, 17). The first time, APRN Scott prescribed medication and told Weis to gargle salt water. *Id.* at 11 (¶ 12). The second time, after observing an infection in both of Weis's ears, APRN Scott prescribed amoxicillin and ear drops and told Weis she would consider him for an ENT referral after his treatment. *Id.* at 11 (¶¶ 18-19). Weis alleges that defendant APRN Scott failed to realize that Weis's medical needs were outside her expertise. *Id.* at 13 (¶ 6). But even accepting Weis's premise, the "failure to alleviate a significant risk that [Scott] should have perceived but did not" does not constitute deliberate indifference under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). The fact that APRN Scott did not perceive the risk Weis's condition posed to his hearing or voice may be negligent, but it does not rise to level of recklessness required by the Eighth Amendment.

Weis also alleges that after he saw Dr. Wright on January 24, 2020, APRN Scott scheduled Weis to see the ENT within three weeks. Doc. #1 at 12 (¶ 30). But by March 5, 2020,

7

Weis still had not seen the ENT, and the nurse Weis saw said that she would email APRN Scott. *Id.* at 12 (¶ 32). Weis ultimately did not see the ENT until June 12, 2020. *Id.* at 12 (¶ 38). According to Weis, his hearing loss and difficulty speaking developed "[b]ecause it took 5 months for what should have taken 3 weeks." *Id.* at 12 (¶ 37).

The lengthy delay alone, however, does not show that it was APRN Scott who was responsible for the delay. Weis does not allege any facts to suggest that the delay in him being seen by the ENT was because of APRN Scott's deliberate indifference to his serious medical needs.

### *Failure to supervise staff*

Weis alleges that defendants Gallagher, HSA Furey, RN Cyr, and Dr. Wright failed to supervise their staff. Doc. #1 at 13 (¶ 6). The Second Circuit has recently clarified the standard for supervisory liability and ruled that "there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, --- F.3d ---, 2020 WL 7687688, at *6 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). Thus, for Eighth Amendment deliberate indifference claims, "the plaintiff must plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it." *Id.* at *4. Weis must establish that defendants Gallagher, HSA Furey, RN Cyr, and Dr. Wright each acted with deliberate indifference, that is, that each defendant "personally knew of and disregarded an excessive risk to [Weis]'s health or safety." *Id.* at *6 (citations omitted).

The only one of these defendants that Weis alleges had any personal involvement in his

8

treatment or its delay is Dr. Wright. While Weis includes Gallagher, HSA Furey, and RN Cyr as defendants, he does not allege that any of them personally knew of and disregarded an excessive risk to his health or safety. Indeed, Weis does not allege that any of these three defendants even saw Weis over the course of the events forming the basis of his complaint. Accordingly, I will dismiss the claims against defendants Gallagher, HSA Furey, and RN Cyr.

As for Dr. Wright, Weis saw Dr. Wright once on January 24, 2020. Doc. #1 at 11 (¶ 26). Dr. Wright listened to Weis's symptoms and treated Weis by prescribing amoxicillin, flushing Weis's ears, and placing Weis on a list for an ENT visit. *Id.* at 11 (¶¶ 27-29). Weis's claim against Dr. Wright is not premised on anything Dr. Wright personally did in treating Weis, but rather Dr. Wright's alleged failure to supervise his staff. But even if this claim was not foreclosed by *Tangreti*, it would not survive because Weis has only asserted in a conclusory fashion that Dr. Wright personally failed to supervise his staff without alleging any specific facts. Weis has not alleged facts to show that Dr. Wright was personally deliberately indifferent to his serious medical needs, and therefore I will dismiss the claim against Dr. Wright.

### *Failure to provide an adequate medical care system*

Weis alleges that defendants Governor Lamont, former DOC Commissioner Cook, current DOC Commissioner Quiros, Warden Rodriguez, and Warden Guadarrama failed to provide an adequate medical care system. Doc. #1 at 13 (¶ 6). But Weis does not allege any facts relating to the DOC Commissioners or the wardens. Weis does allege that Governor Lamont is "in charge of entering the state into or out [of] state contracts especially pertaining to inmates medical care," *id.* at 9 (¶ 3), but otherwise does not allege any other factual details about Governor Lamont's involvement with DOC's medical care system. Further, Weis does not allege

9

that any of these defendants were aware of the alleged deficiencies in DOC's medical care system that resulted in Weis's delay in treatment, nor does Weis allege any facts to demonstrate that these defendants failed to provide an adequate medical care system beyond conclusory allegations.

To the extent that Weis's claim is essentially a supervisory liability claim, Weis must plead and prove that the defendants had subjective knowledge of a substantial risk of serious harm to Weis and disregarded it. Weis has not alleged that any of these defendants were even aware of Weis's serious medical condition, let alone that they disregarded a substantial risk of serious harm to Weis. Accordingly, I will dismiss Weis's claim against defendants Governor Lamont, former DOC Commissioner Cook, current DOC Commissioner Quiros, Warden Rodriguez, and Warden Guadarrama.

## CONCLUSION

For the reasons stated above the Court DISMISSES Weis's federal law claims without prejudice pursuant to 28 U.S.C. § 1915(A)(1).

The Clerk of Court shall close this case. If Weis is able to allege additional facts that show valid grounds to proceed under federal law against any defendant, he may file a motion to reopen this action along with an amended complaint by **February 18th, 2021**.

It is so ordered.

Dated at New Haven this 19th day of January 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge