# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

RANDALL WEIS,
*Plaintiff*,

v.                                                              No. 3:20-cv-1753 (JAM)

NED LAMONT *et al.*,
*Defendants*.

## ORDER GRANTING MOTION TO REOPEN
## AND SECOND INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A

Plaintiff Randall Weis is a prisoner in the custody of the Connecticut Department of Correction ("DOC"). He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983. Weis alleges that the defendants violated his Eighth Amendment rights by delaying his medical treatment. I have previously dismissed his complaint without prejudice. *See Weis v. Lamont*, 2021 WL 171042 (D. Conn. 2021). Weis has now filed a motion to reopen along with an amended complaint. I will grant the motion to reopen and conclude that the Eighth Amendment claim he alleges in his amended complaint may proceed against some of the defendants.

### BACKGROUND

Weis's amended complaint reiterates his claims against the same ten defendants: Connecticut Governor Ned Lamont; former DOC Commissioner Rollin Cook; the current DOC Commissioner Angel Quiros; Colleen Gallagher; Richard Furey; Michelle Cyr; Dr. Johnny Wright; APRN Juanita Scott; Warden Nick Rodriguez; and Warden Jesus Guadarrama.[1]

---

[1] Doc. #12 at 6-7.

Although Weis alleges that he is suing each defendant in their official capacity, I understand Weis to be suing each defendant also in their individual capacity for an award of money damages.[2] The events underlying this action occurred while Weis was housed at Osborn Correctional Institution ("Osborn").[3]

The following facts are alleged in the amended complaint and are accepted as true for purposes of initial review only. Weis's amended complaint largely reiterates the same allegations made in his original complaint with some added allegations concerning individual defendants' involvement in the alleged constitutional violations.

On August 9, 2019, Weis submitted a sick call request complaining of pain when swallowing.[4] Weis was not seen that day and experienced increased pain.[5] On August 13, 2019, Weis submitted a second request with the same complaint, but again was not seen, causing him more pain and discomfort.[6]

On September 4, 2019, Weis submitted a third request and was seen the following day.[7] Nurse S. Gunther gave Weis a strep test, which came back positive, and gave Weis amoxicillin.[8]

Because the problem persisted and the pain in Weis's ears was getting worse, Weis submitted another request on September 14, 2019.[9] Weis was seen on September 17 and again

---

[2] *Ibid.*

[3] *Id.* at 6.

[4] *Id.* at 8 (¶ 1).

[5] *Ibid.*

[6] *Id.* at 8 (¶ 2).

[7] *Id.* at 8 (¶ 3).

[8] *Id.* at 8 (¶¶ 4-5).

[9] *Id.* at 8 (¶ 6).

on September 19, 2019.[10] When a second strep test came back negative, Weis was added to the list to see a doctor.[11] Weis was told to drink warm water and not to use a loud voice, but was given nothing for his ears.[12]

On September 25, 2019, Weis saw APRN Scott and explained his ear and throat issues to her.[13] APRN Scott prescribed Nasacort and told Weis to gargle salt water.[14]

Weis again submitted a sick call request on October 2, 2019, and was seen on October 21 and 24, 2019.[15] Weis was told on both dates that he was placed on the list to see a doctor.[16] Weis also signed up for prompt care and was seen on December 26, 2019 because of his continuing pain.[17] Medical staff told Weis that they did not see his name on the doctor's list and added Weis to it.[18]

Weis saw APRN Scott again on January 8, 2020.[19] APRN Scott observed an infection in both of Weis's ears and gave Weis amoxicillin and ear drops.[20] She also told Weis that she would consider him for an ENT referral after his treatment.[21]

---

[10] *Id.* at 8 (¶ 7).

[11] *Id.* at 8 (¶ 8).

[12] *Id.* at 8 (¶ 9).

[13] *Id.* at 8 (¶¶ 10-11).

[14] *Id.* at 9 (¶ 12).

[15] *Id.* at 9 (¶ 13).

[16] *Id.* at 9 (¶ 14).

[17] *Id.* at 9 (¶ 15).

[18] *Id.* at 9 (¶ 16).

[19] *Id.* at 9 (¶ 17).

[20] *Id.* at 9 (¶¶ 18-19).

[21] *Id.* at 9 (¶ 20).

Weis's hearing and the pain in his throat worsened, and his pain level rose rapidly from a 6 to a 10.[22] Weis again signed up for prompt care and was seen by RN Zea.[23] Weis told RN Zea about his "constant pain and loss of hearing," and RN Zea looked in Weis's ears.[24] RN Zea told Weis she was going to email Dr. Wright and that Weis would see Dr. Wright the next day.[25]

Weis saw Dr. Wright on January 24, 2020.[26] After listening to Weis describe his symptoms, including his loss of hearing and the pain in his ears and throat, Dr. Wright prescribed amoxicillin, flushed Weis's ears, and placed Weis on a list for an ENT visit.[27] APRN Scott scheduled Weis to see the ENT within three weeks.[28]

Weis's symptoms got worse, and he again signed up for prompt care, where he saw RN Huff on March 5, 2020.[29] RN Huff told Weis she would email APRN Scott.[30] But by March 20, 2020, Weis still had not seen the ENT.[31] Weis's hearing "started to diminish greatly," and it became "harder and harder" for Weis to speak.[32] Due to his ongoing pain, Weis signed up for prompt care again and was seen on March 19, 2020, where he was told he had to wait for the

---

[22] *Id.* at 9 (¶ 21).

[23] *Id.* at 10 (¶ 22).

[24] *Id.* at 10 (¶¶ 23-24).

[25] *Id.* at 10 (¶¶ 24-25).

[26] *Id.* at 10 (¶ 26).

[27] *Id.* at 10 (¶¶ 27-29).

[28] *Id.* at 10 (¶ 30).

[29] *Id.* at 10 (¶¶ 31-32).

[30] *Id.* at 10 (¶ 32).

[31] *Id.* at 11 (¶ 1).

[32] *Id.* at 11 (¶ 2).

ENT.[33] Weis asserts that "[b]ecause it took 5 months for what should have been 3 weeks, [Weis] couldn't hear out of [his] left ear at all and could bar[e]ly talk."[34]

On June 12, 2020, Weis went to his first ENT visit.[35] The doctor removed a "huge amount of blockage" in Weis's left ear and looked down Weis's nose and throat.[36] Weis's hearing "was better but still changed."[37] The doctor diagnosed Weis with "Hyperadnoid rentothypy [*sic*] and a vocal fold granuloma."[38] He ordered Weis to see a vocal specialist and to get a hearing test and CT scan.[39]

On July 8, 2020, Weis saw Dr. Wang and Dr. Lafrenieve, who saw Weis's vocal fold and recommended surgery on his vocal cords.[40] On July 29, 2020, Weis was sent to the University of Connecticut for an audiogram, the results of which showed that Weis had diminished hearing in his left ear.[41] Weis was approved for a hearing aid by Erin Perez, who gave Weis the audiogram.[42]

Weis states that his hearing has "diminished to the point that people must now speak to [Weis] loudly in order for [him] to hear," and his voice is hoarse and painful "no matter how

---

[33] *Id.* at 11 (¶¶ 3-4).

[34] *Id.* at 11 (¶ 5).

[35] *Id.* at 11 (¶ 6).

[36] *Id.* at 11 (¶¶ 7-8).

[37] *Id.* at 11 (¶ 9).

[38] *Id.* at 11 (¶ 10).

[39] *Id.* at 12 (¶ 11).

[40] *Id.* at 12 (¶¶ 12-13).

[41] *Id.* at 12 (¶¶ 14-15).

[42] *Id.* at 12 (¶ 16).

hard [he] tr[ies]."[43] Weis asserts that these conditions are "all due to delays in treatment by medical professionals" and that these delays are "due to a d[y]sfunctional medical system at each level."[44]

Weis's new allegations began at this point in his amended complaint. On July 15, 2020, Weis saw APRN Scott for a physical in preparation for surgery, wherein APRN Scott informed Weis of the risks of surgery and Weis agreed to go through with it.[45] APRN Scott also ordered lab work and conducted the physical.[46] Weis also asserts that at some point during this time period, APRN Scott gave him a mold for a hearing aid.[47]

After a month had passed with no contact and with his pain growing, Weis wrote to medical on August 30, 2020 to find out what priority level was set for his surgery.[48] The response Weis received on September 2, 2020 was that APRN Scott did not schedule the surgery.[49]

Weis adds additional allegations against other individual defendants. Weis alleges that he had a face-to-face meeting at some point with defendants Gallagher and Cyr to discuss his health services review,[50] as Weis alleges that he filed several grievances that he also appealed.[51] During

---

[43] *Id.* at 12 (¶¶ 17-18).

[44] *Id.* at 12 (¶¶ 19-20).

[45] *Id.* at 13 (¶¶ 21-22).

[46] *Id.* at 13 (¶ 23).

[47] *Id.* at 21.

[48] *Id.* at 13 (¶¶ 24-25).

[49] *Id.* at 13 (¶¶ 26-27).

[50] *Id.* at 17.

[51] *Id.* at 5.

this meeting, Gallagher "admitted that it was the failed policies of D.O.C. that le[]d to [Weis's] delayed treatment."[52] Weis also alleges that a letter dated June 26, 2020 "confirmed all of this in writing."[53] Weis asserts that Gallagher told him he would be going to the ENT "ASAP," which he subsequently did, that changes to the policy dealing with specialized care were coming, and that Weis would "receive all [his] follow ups."[54] Weis asserts that during this meeting, he was led to believe that Gallagher would "notify Scott so [Weis] would suffer no more delays," but that he still has no hearing aid or a scheduled surgery.[55]

Weis also alleges that defendant Furey "allow[ed APRN Scott] to not schedule appointments for [Weis] after they were approved and she had given [Weis] a physical for said surgery."[56] Weis asserts that as the Level Two health services administrator, Furey was "fully aware of [Weis's] situation yet cho[]se to do nothing in instructing his staff in how to a[l]lev[i]ate any of [Weis's] problems or solve the delay issue," reiterating that Furey's fault is based on his failure to supervise and enforce policies.[57] Weis makes similar allegations against defendant Dr. Wright, arguing that he is liable for failing to supervise APRN Scott and failing to "make sure that all subsequent needs of [Weis's] were being met" as APRN Scott's supervisor.[58]

Weis also adds to his allegations against Governor Lamont, DOC Commissioner Quiros, and former DOC Commissioner Cook based on their decision to allow the removal of "D.O.C.

---

[52] *Id.* at 17.

[53] *Ibid.*

[54] *Ibid.*

[55] *Ibid.*

[56] *Id.* at 18.

[57] *Ibid.*

[58] *Id.* at 20.

from a UConn based health care system to a D.O.C. based system."[59] According to Weis, this decision, with the defendants' lack of oversight, "resulted in policy that is confusing for their medical staff" and "failed to account the need to change how specialized care would be managed."[60] Weis asserts that at the time of the policy switch, inmates were told that it would not "create any delays in treatment" and were in fact told that it would "streamline care."[61] Weis believes that in making this policy switch, defendants Lamont, Quiros, and Cook and their subordinates "effectively assumed the role as health services administers w[h]ich  means they were directly responsible to make sure that there were no holes in the system in w[h]ich [Weis] could fall through."[62] Weis admits that these defendants themselves "may be ignorant of most of the polic[ie]s they enforce, but by enforcing them and by making D.O.C. run its own health care system they made themselves and their subordinates liable" due to their failure to "provide an adequate medical care system."[63]

Weis makes similar allegations against defendants Warden Rodriguez and Warden Guadarrama, asserting that because the defendant wardens were aware of the policy switch, they "became part of and responsible for the health care needs at the facility" but "failed to make sure that at their facility there were no delays in treatment."[64]

---

[59] *Id.* at 14.

[60] *Ibid.*

[61] *Ibid.*

[62] *Ibid.*

[63] *Id.* at 15.

[64] *Id.* at 16.

DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

The Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

Weis's amended complaint essentially remains centered on the three Eighth Amendment deliberate indifference claims premised on his delay in receiving treatment that were in his original complaint: (1) that defendants Governor Lamont, former DOC Commissioner Cook, current DOC Commissioner Quiros, Warden Rodriguez, and Warden Guadarrama failed to provide an adequate medical care system; (2) that defendants Gallagher, Furey, Cyr, and Dr. Wright failed to supervise their staff; and (3) that defendant APRN Scott failed to realize that

9

Weis's medical needs were outside her expertise.[65] Weis requests declaratory and injunctive relief as well as compensatory and punitive damages.[66]

The Eighth Amendment to the U.S. Constitution protects against the infliction of cruel and unusual punishment. *See* U.S. Const. amend. VIII. "An Eighth Amendment claim arising out of inadequate medical care requires a demonstration of 'deliberate indifference to [a prisoner's] serious medical needs.'" *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prevail on such a claim, a plaintiff must prove that "(1) objectively, the alleged deprivation of medical care was 'sufficiently serious,' and (2) subjectively, that the defendants acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'" *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006)).

To be "sufficiently serious," the deprivation of medical care must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hill*, 657 F.3d at 122 (quotation omitted). This inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 280. Factors to consider include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

---

[65] Doc. #12 at 14-21.

[66] *Id.* at 22-23.

Weis alleges that delays in treatment for his ongoing throat and ear pain resulted in his hearing loss and the hoarseness and pain he experiences in speaking. Because Weis asserts that he experienced ongoing pain as a result of his condition and because his hearing loss and difficulty in speaking significantly affect his daily activities, I will assume for the purposes of this initial review that Weis has a serious medical need sufficient to satisfy the objective prong.

As for the subjective prong, "[a]llegations of delayed medical care may support a finding of deliberate indifference to a serious medical need, and allegations that delayed treatment resulted in serious harm may bear on the reasonableness of an inference of a defendant's knowledge of the risks to which he or she subjected the plaintiff." *Dotson v. Fischer*, 613 F. App'x 35, 39 (2d Cir. 2015).[67] Under this prong, the "charged officials must be subjectively reckless in their denial of medical care," that is, they must "act or fail to act while *actually aware* of a substantial risk that serious inmate harm will result." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Salahuddin*, 467 F.3d at 280) (emphasis in original). They "need only be aware of the risk of harm, not intend harm." *Ibid.*

But "[m]edical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness—'an act or a failure to act by [a] prison doctor that evinces a conscious disregard of a substantial risk of serious harm.'" *Hill*, 657 F.3d at 123 (quoting *Chance*, 143 F.3d at 703). Indeed, the level of recklessness required to meet the subjective prong is more than mere negligence. *See Salahuddin*, 467 F.3d at 280.

Because the subjective element of Weis's Eighth Amendment claims differ with respect

---

[67] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

to each defendant, I will address them each in turn.

### *APRN Scott*

I previously dismissed Weis's claim against APRN Scott because Weis did not allege any facts to suggest that the delay he experienced before seeing the ENT was because of APRN Scott's deliberate indifference to his serious medical needs. *Weis*, 2021 WL 171042, at *4. Weis now asserts that APRN Scott saw him on July 15, 2020 in preparation for surgery and that Weis agreed to go through with the surgery after APRN Scott explained the risks.[68] However, after more than a month passed, Weis learned from medical that APRN Scott did not schedule the surgery.[69]

I find that these additional allegations in the amended complaint are sufficient to allow Weis's claim against APRN Scott for deliberate indifference to go forward. By the time of the physical on July 15, 2020, Weis had already seen the specialists at UConn, who recommended that Weis undergo surgery and receive a hearing aid. APRN Scott obtained Weis's consent for the surgery and completed a physical and ordered lab work in preparation for the surgery. APRN Scott also gave Weis a mold for the hearing aid he was supposed to receive. APRN Scott was well aware at this point of the seriousness of Weis's conditions and his need for further treatment—including surgery—and APRN Scott was, by the time of the physical in July 2020, well aware of the risk of harm to Weis if he did not receive further treatment. The response Weis received from medical that APRN Scott still did not schedule the surgery evinces conscious disregard to the substantial risk Weis faced in delaying treatment. Accordingly, I will allow

---

[68] Doc. #12 at 13 (¶¶ 21-22).

[69] *Id.* at 13 (¶¶ 24-26).

Weis's Eighth Amendment claim for deliberate indifference against APRN Scott to go forward.

### *Gallagher, Furey, Cyr, and Dr. Wright*

I previously dismissed Weis's claims against defendants Gallagher, Furey, Cyr, and Dr. Wright for failure to supervise staff because Weis did not allege any personal involvement by any of these defendants in the violation of his constitutional rights. *Weis*, 2021 WL 171042, at *4-5. As I noted in my previous order, the Second Circuit has recently clarified the standard for supervisory liability and ruled that "there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). Thus, for Eighth Amendment deliberate indifference claims, "the plaintiff must plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it." *Id.* at 616. Weis must establish that defendants Gallagher, Furey, Cyr, and Dr. Wright each acted with deliberate indifference, that is, that each defendant "personally knew of and disregarded an excessive risk to [Weis]'s health or safety." *Id.* at 619 (citations omitted).

Weis's allegations against defendants Furey and Dr. Wright remain substantially the same in his amended complaint for the purposes of evaluating his deliberate indifference claim. Weis alleges that Furey and Dr. Wright failed to supervise APRN Scott and failed to ensure that Weis's problems with the delay in treatment were addressed. Besides a conclusory allegation that Furey, as the Level Two health services administrator, was "fully aware" of his situation, Weis has not added any allegations to show that Furey or Dr. Wright personally knew of and disregarded an excessive risk to his health or safety. Under the Second Circuit's supervisory

13

liability rule in *Tangreti*, Weis has not sufficiently alleged that Furey and Dr. Wright, through their own individual actions, violated the Constitution. Accordingly, I will dismiss Weis's claims against Furey and Dr. Wright.

Weis's allegations against defendants Gallagher and Cyr, however, are different. Weis now alleges in his amended complaint that he had a face-to-face meeting with defendants Gallagher and Cyr to discuss his health services review and the delays in his treatment. Weis asserts that Gallagher told him that he would receive his follow-up treatment and that during this meeting, he was led to believe that Gallagher would discuss the issue with APRN Scott so that Weis would not experience any further delays.

Like with APRN Scott, Weis has now sufficiently alleged that Gallagher and Cyr were personally aware of the fact that Weis had experienced multiple delays in treatment and the risk to Weis if he continued to experience delays in treatment, and yet failed to ensure that Weis's needs were addressed by notifying APRN Scott of the issue. Accordingly, I will allow Weis's claims against Gallagher and Cyr to go forward.

### Governor Lamont, DOC Commissioner Quiros, former Commissioner Cook, Warden Rodriguez, and Warden Guadarrama

I previously dismissed Weis's claims against defendants Governor Lamont, DOC Commissioner Quiros, former Commissioner Cook, Warden Rodriguez, and Warden Guadarrama because Weis failed to allege that any of these defendants had subjective knowledge of a substantial risk of serious harm to Weis and disregarded it. *Weis*, 2021 WL 171042, at *5. Weis's new allegations against these defendants go to, in the case of Governor Lamont, Commissioner Quiros, and former Commissioner Cook, the policy decision to switch the health

care system from one that was UConn-based to one that was DOC-based, and, in the case of the

defendant wardens, the knowledge of the policy switch and the failure to ensure there were no

delays in treatment. These claims still assert supervisory liability on the part of these five

defendants, and, under *Tangreti*, Weis's failure to allege that any of these defendants knew of the

substantial risk to Weis himself and disregarded it is fatal to his claim. Weis has not alleged facts

to suggest that any of these defendants were more than negligent with respect to their general

responsibilities. Accordingly, I will dismiss Weis's claim against these five defendants.

CONCLUSION

The Court GRANTS the motion to reopen this action. Doc. #12. In accordance with the

accompanying ruling, the Court enters the following orders:

(1) Weis's claims under the Eighth Amendment for money damages and injunctive relief

against defendants Scott, Gallagher, and Cyr in their official and individual capacity may

proceed. All remaining claims and defendants are DISMISSED.

(2) The Clerk shall verify the current work addresses for the named defendants with the

DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the

complaint to those defendants at the confirmed addresses within twenty-one (21) days of this

Order, and report to the Court on the status of the waiver requests by not later than the thirty-fifth

(35) day after mailing. If any defendant fails to return the waiver request, the Clerk shall arrange

for in-person service by the U.S. Marshals Service on that defendant, and that defendant shall be

required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(3) The Clerk shall prepare a summons form and send an official capacity service packet

to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the Complaint on

15

defendants Scott, Gallagher, and Cyr at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within twenty-one (21) days from the date of this Order and to file a return of service within thirty (30) days from the date of this Order. It is so ordered.

(4) All defendants shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.

(5) The Clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(6) The discovery deadline is extended to six months (180 days) from the date of this Order. The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which the Clerk must send to plaintiff with a copy of this order. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders. Note that discovery requests should not be filed with the Court. In the event of a dispute over discovery, the parties should make a good faith effort to resolve the dispute amongst themselves; then, the parties should file the appropriate motion to compel on the docket.

(7) The deadline for summary judgment motions is extended to seven months (210 days) from the date of this Order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion (i.e. a motion to dismiss or a motion for summary judgment) within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the Court may grant the dispositive motion without further proceedings.

(9) If plaintiff changes his address at any time during the litigation of this case, Local

Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he must indicate all of the case numbers in the notification of change of address. Plaintiff must also notify defendants or defense counsel of his new address.

(10) Plaintiff shall utilize the Prisoner E-Filing Program when filing documents with the Court. Plaintiff is advised that the Program may be used only to file documents with the Court. As discovery requests are not filed with the Court, the parties must serve discovery requests on each other by regular mail.

It is so ordered.

Dated at New Haven this 10th day of May 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge